## NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 17a0249n.06

Case No. 16-4040

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**

May 02, 2017

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 18, | ) ) ) | |
| Plaintiff-Appellee, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| v. | ) ) | |
| OHIO CONTRACTORS ASSOCIATION, | ) ) | |
| Defendant-Appellant. | ) | |

BEFORE: GIBBONS, SUTTON, and COOK, Circuit Judges.

COOK, Circuit Judge. International Union of Operating Engineers, Local 18 ("Local 18") filed suit to compel Ohio Contractors Association ("OCA") to arbitrate a wage-rate dispute under a collective-bargaining agreement. Relying on this court's opinion in *Local 18 International Union of Operating Engineers v. Ohio Contractors Association*, 644 F. App'x 388 (6th Cir. 2016) ("*Hydro-Excavator*")—a case involving the same parties and contract clauses—the district court granted Local 18's summary judgment motion and compelled arbitration. The OCA appealed, and we AFFIRM.

I.

*The Collective-Bargaining Agreement.* Local 18 represents operating engineers—workers who handle the machinery used to construct roads and buildings—in Ohio and Northern

Kentucky. The OCA is a construction-company trade group. The parties entered into a collective-bargaining agreement ("Agreement") that places specified equipment within the union's exclusive jurisdiction; companies seeking to use such equipment must hire union members. The contract also includes a schedule pegging the members' pay rate to the type of equipment operated.

Important here, the Agreement includes two arbitration clauses. One is triggered when a party seeks to designate a wage rate for new, unclassified equipment that is in service on a job site. The other, a general arbitration clause, governs disputes regarding the Agreement's meaning, intent, and application.

*The Dispute.* Local 18 alleges that employers are using new, remote-controlled, multi-use excavation machinery ("Brokk equipment") on highway construction projects. The union would have an arbitrator assign a wage classification to the machinery and thereby limit its use to union members. The OCA, on the other hand, aims to *avoid* a wage classification and thereby retain the option of using non-union labor.

The dispute implicates the Agreement's new-equipment arbitration provision. It reads: "If equipment within the jurisdiction of the International Union of Operating Engineers is used by an Employer and there is not an appropriate classification listed under the wage schedule herein," the parties must negotiate a pay classification, and if negotiations fail, arbitrate the dispute. According to Local 18, this wording requires the OCA to arbitrate a wage rate because the Brokk equipment 1) is "new," in that crews hadn't previously used it in highway construction, 2) lies within the union's "jurisdiction" because it "perform[s] the same function"—excavation, drilling, and demolition—as other machinery listed in the agreement, and 3) is "used by an Employer."

For its part, the OCA argues the inapplicability of the new-equipment clause because the Brokk equipment 1) is not "new," as it "has been in use for excavating since at least 1990 and has been used in Ohio in the highway heavy industry since at least 2011," 2) lies outside the union's jurisdiction because it differs from other machine-types enumerated in the agreement, and 3) no "employer," as defined in the agreement, uses the equipment. The OCA thus refused to arbitrate, and Local 18 moved to compel arbitration. The district court compelled arbitration, reasoning that an arbitrator must determine whether the dispute satisfied the new-equipment clause's newness, jurisdiction, and employer-use requirements. The OCA appealed.

II.

We review de novo the district court's order. *Great Earth Cos. v. Simons*, 288 F.3d 878, 888 (6th Cir. 2002). "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). In general, "whether the parties have submitted a particular dispute to arbitration, *i.e.*, the 'question of arbitrability,' is 'an issue for judicial determination unless the parties clearly and unmistakably provide otherwise.'" *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (emphasis and alterations omitted) (quoting *AT&T Tech., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 649 (1986)).

We recently adjudicated a materially identical dispute involving the same parties and contract provisions. In *Hydro-Excavator*, Local 18 sought to compel the OCA to arbitrate a wage rate for members operating hydro-excavators, an equipment type not listed in the Agreement's wage schedule. 644 F. App'x at 389–90. Like here, the OCA refused, arguing that hydro-excavators were neither new nor within the union's jurisdiction.

We held that the *general* arbitration clause—which directs the parties to arbitrate any "dispute aris[ing] among any of the parties, (Employee, Employer, Association and/or Union) to this Agreement as to its meaning, intent or the application of its terms"—required that an arbitrator determine whether the dispute fell within the new-equipment clause's ambit. We explained that the general arbitration clause "applies to disputes among *any* of the potentially interested parties, including disputes between the OCA and Local 18." *Id.* at 395. And we reasoned that the clause "applies to disputes 'as to the CBA's meaning, intent or the application of its terms.' No exceptions limit this broad coverage." *Id.* (internal alterations omitted); *see also id.* at 397 (same reasoning applied to OCA's argument that hydro-excavators were not new).

We apply the same reasoning here, given that the agreement encompasses disputes between the "Association" and the "Union," and given that the "meaning, intent or [] application" of the new-equipment clause's newness, jurisdiction, and employer-use requirements is at bar. As in *Hydro-Excavator*, an arbitrator, not the court, must determine whether the Brokk-equipment disagreement lies within the scope of the new-equipment clause.

The OCA's weak counter-arguments fail to best *Hydro-Excavator*'s on-point analysis. Its main contention—that Local 18 pursued arbitration only under the new-equipment clause, rather than the general arbitration clause—misses the mark. Local 18 *is* pursuing arbitration under the new-equipment clause. The general arbitration clause matters only in that it requires the arbitrator, rather than a court, to determine whether the new-equipment clause bears on this dispute.

The OCA's remaining arguments—that 1) the union failed to follow a grievance procedure included in the general arbitration clause, 2) the contract prohibits an Arbitrator from

adding a new classification rate to the agreement, and 3) specific contract provisions trump general provisions—were addressed and rejected by *Hydro-Excavator*, 644 F. App'x at 396–97.

## III.

For these reasons, we AFFIRM the district court's order compelling arbitration.